UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT DAVIS                                    CIVIL ACTION

VERSUS                                          NO. 06-3037

ROBERT EVANGELIST, ET AL                        SECTION "F"


ORDER AND REASONS

Before the Court are the Motions of defendants Evangelist, Smith, and the City of New Orleans to Dismiss Pursuant to Rule 12(c) or, Alternatively, for Summary Judgment Pursuant to Rule 56. For the reasons that follow, the motion to dismiss is DENIED and the motion for summary judgment is GRANTED IN PART and DENIED IN PART.

**Background**

The plaintiff has sued three New Orleans police officers, the City of New Orleans, two Federal Bureau of Investigation agents, and the United States of America for violations of the Fourth, Fifth, and Seventh Amendments to the United States Constitution and Louisiana Civil Code Articles 2315, 2316, and 2320.[1] Davis claims that police officers, Robert Evangelist, Lance Schilling,[2] and

---

[1] The two FBI agents and the United States have been dismissed.

[2] Schilling has passed away. The plaintiff was granted leave to substitute his estate on July 17, 2009. The estate is not involved in these motions and it is unclear whether plaintiff has pursued his claims against the officer's estate.

1

Stewart Smith, acted under color of state law in depriving him of his constitutional rights. As always, the parties differ dramatically about what happened.

Davis alleges that in October 2005, New Orleans police officers attacked him in the French Quarter, shoved him to the pavement, beat him and kicked him about the face, head, and body, causing serious and permanent bodily and emotional injuries. Davis states he left his hotel and began walking down Bourbon Street to look for cigarettes. He approached NOPD officer Haynes Rayas to ask about the curfew time. Davis asserts Officer Evangelist interrupted the conversation. Davis admits that he told Evangelist he thought the officer was being rude, and at that point Evangelist took Davis to the wall for questioning. Evangelist claims that, after observing Davis acting strangely in the streets, Davis elbowed him in the chest when the officer approached him. Davis claims Evangelist needlessly threw him against the wall and was then "bombarded" by police officers and beaten. Davis insists he was not told he had committed a crime and was never placed under arrest before his beating; Evangelist admits that he never told Davis he was under arrest but that Davis seemed strangely disoriented when Evangelist approached him. Davis denies he resisted arrest and only tried to block the blows being thrown. He notes that the majority of the attack was captured by Associated Press video footage.

Davis was then placed under arrest for public intoxication, battery, resisting arrest, and public intimidation, but the charges against him were dropped, and both Evangelist and Officer Schilling were fired for violating NOPD practices and procedures. He claims a litany of physical and emotional injuries from the beating.

The defendants move to dismiss plaintiff's claim for false arrest pursuant to Rule 12(c) of the Federal Rules of Civil Procedure because plaintiff fails to allege sufficient facts that would entitle him to relief. Officers Evangelist and Smith move for summary judgment on the basis of qualified immunity, asserting that they did not violate Davis's constitutional right to be free from excessive force, and that even if Davis can establish a constitutional violation, the officers' actions were objectively reasonable in light of clearly established law. The officers also assert that plaintiff's state law claims must fail for failure to plead specific facts under which he would be entitled to relief. Finally, the City of New Orleans asserts that plaintiff has not presented sufficient evidence of a municipal policy that was the driving force behind the alleged constitutional deprivation; therefore, under Monell v. Department of Social Services, plaintiff's claims must be dismissed.

I.

A. Rule 12(c)

The standard for deciding a motion under Rule 12(c) of the

3

Federal Rules of Civil Procedure is the same as the one for deciding a motion under Rule 12(b)(6). Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 313 n.8 (5th Cir. 2002). Rule 12(b)(6) allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)). To state a claim upon which relief can be granted, Rule 8(b) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).

In considering a Rule 12(b)(6) or a Rule 12(c) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on

its face." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Twombly, 550 U.S. at 569). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (quotation marks, citations, and footnote omitted).

## B. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

A. Motion to Dismiss

Whether an arrest is constitutionally valid depends upon whether the arresting officers "had probable cause to . . . believ[e] that the [plaintiff] had committed or was committing an offense." Beck v. State of Ohio, 379 U.S. 89, 91 (1964); Atwater v. City of Lago Vista, 195 F.3d 242, 244 (5th Cir. 1999) ("[W]hen probable cause exists to believe that a suspect is committing an offense, the government's interest in enforcing its laws outweigh the suspect's privacy interests, and an arrest of the suspect is reasonable."). The defendants challenge the plaintiff's claim of false arrest under Rule 12(c); therefore, the Court looks only to the pleadings to determine if the plaintiff has "give[n] the

defendant fair notice of what the claim is and the grounds upon which it rests." Erickson, 127 S. Ct. at 2200. Rule 8(b) only requires "a short and plain statement of the claim." Contrary to the defendants' assertions, "[s]pecific facts are not necessary." Erickson, 127 S. Ct. at 2200 (citing Twombly, 550 U.S. 544).

The plaintiff clearly has fulfilled his pleading requirement. He asserts in his complaint that the officers "placed plaintiff under arrest and falsely and fraudulently charged him with the crimes of public intoxication, assault, and resisting arrest." He claims that the officers knew the charges were wholly false and untrue and that all charges were subsequently dropped. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). Viewing all allegations in the complaint as true, the plaintiff has sufficiently pleaded enough facts to offer a plausible claim that the officers did not have probable cause to arrest him.

B. Qualified Immunity

Claims of constitutional violations against state officials performing discretionary functions are subject to the defense of qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "[Q]ualified immunity protects government officials 'from

liability for civil damages insofar as their conduct does not violate clearly established regulatory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 845 (2009) (quoting Harlow, 457 U.S. at 818). Qualified immunity is a defense to suit, it should be adjudicated before a determination of liability, and, therefore, it should be examined "at the earliest possible stage in the litigation." Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Id. at 816. The Court must evaluate two factors to determine whether qualified immunity should apply: (1) whether the facts that plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct. Pearson, 129 S. Ct. at 815-816 (holding that a court can examine these two factors in any order).

*1. Was there a violation of a constitutional right?*

Under the first step, to state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable. Bush v. Strain, 513 F.3d 492, 500-01 (5th Cir. 2008). When apprehending or seizing an individual for law enforcement purposes, police officers must be permitted to

use objectively reasonable force in light of the facts and circumstances confronting them. Johnson v. Morel, 876 F.2d 477, 479 (5th Cir. 1989) (en banc). A claim of excessive force in the context of an arrest "is most properly characterized as invoking the protections of the Fourth Amendment" and should be analyzed under an objective reasonableness standard, without regard to the officers' underlying intent or motivation. Graham v. M.S. Connor, 490 U.S. 386, 394 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396. Although these issues presently arise in a summary judgment relief context, recently the Fifth Circuit has confirmed that in cases "where the officer's conduct is less clear and an assessment of reasonableness mandates a number of factual inferences, the case falls within the province of the jury." Lytle v. Bexar County, Tex., 560 F.3d 404, 411 (5th Cir. 2009). Further, summary judgment should be granted only if "no rational jury could conclude that [the officer] violated the Fourth Amendment."[3] Id. at 412.

The plaintiff has failed to satisfy the first prong as to

---

[3] Although the video of the incident is at best terribly inflammatory, the identity of the officer, who administered most of the violence upon plaintiff, as Evangelist, is intensely disputed.

9

Officer Smith. While Smith is mentioned in the complaint along with Evangelist and Schilling, the plaintiff does not mention him in his account of what happened in his opposition or in his Shultea reply. At one point in his Shultea reply, plaintiff states that he was beaten by "all four officers," referring to Evangelist, Schilling, and FBI agents Stephen Noh and Trent Miley. In Evangelist's deposition, he states that the only people who were in contact with Davis were himself, Schilling, Noh, and Miley. Nowhere has plaintiff pointed to any evidence that Smith was involved in the beating. Therefore, the excessive force claims against Smith should be dismissed.

Davis has, however, satisfied the first prong as to Officer Evangelist. Davis has described extensive physical and mental injuries that are the result of the force used by Officers Evangelist and Schilling. According to Davis's account of the incident, he was immobilized on the ground while they kicked and beat him. He states he was struck and kicked in the head, which resulted in blood flowing from his head onto the sidewalk. The video of the incident is chilling. Davis notes he was not told he had violated any law and insists that he did not resist the officers other than to try to block their blows. Davis points to: witness statements, Davis's medical records, and the Associated Press video. While Evangelist states in his deposition that he never hit Davis in the head, nor did he see anyone else hit him in

10

the head, the video at best is clear on a central point: Davis was kicked an beaten by one or more police officers. The video creates at least an issue of material fact as to this issue that requires the consideration of more evidence before a reasoned determination can be made by the Court, or a jury.

The reasonableness of these officers' actions should be considered in the context of the "severity of the crime at issue, whether the suspect posed a threat to the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Bush, 513 F.3d at 501 (quoting Graham, 490 U.S. at 396). The charged crimes were public intoxication, assault, and resisting arrest. Specifically, the assault that Evangelist asserts Davis committed was somehow elbowing Evangelist in the chest prior to being taken to the wall. Evangelist states that he thought that Davis posed a threat to him, and at one point, after Davis had been subdued on the ground, he pushed Davis down with his foot because he thought Davis might try to "get[] up, run[] out into the street," and run into people. He said he wanted Davis to stay on the ground until EMS could treat him. However, Davis asserts he was knocked unconscious by an earlier blow by one of the officers. While Evangelist claims that Davis was resisting arrest, Evangelist admits he never told Davis he was under arrest. The stark video footage creates at least an issue of fact as to whether Davis was a flight risk, particularly once he was subdued on the

ground. Summary judgment is wholly inappropriate - again, the record is incomplete and a trial will better focus these issues for the Court, or the jury.

Next, the Court must determine whether Evangelist's "use of force, though a violation of the Fourth Amendment, was nevertheless objectively unreasonable in light of clearly established law." Bush, 513 F.3d at 501. "[W]hile the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene." Id. at 502. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Again, the Court must look at the severity of the crime, the risk the suspect posed, and whether he was resisting arrest. Id. These are fact-driven and summary relief on this record is not appropriate.

There at least exists a serious and pivotal issue of fact as to whether Evangelist administered the blows; the video evidence contradicts his claims that neither he, nor anyone else, hit Davis in the head. Further, there is an issue of fact as to whether Evangelist viciously kicked plaintiff. The law is "clearly established" that a person has a right to not be punched and kicked in the head once subdued. See Bush, 513 F.3d at 501 (holding that

officers forcefully slamming a suspect's face into a vehicle when the suspect was already subdued, causing injuries to her face, teeth, and jaw and requiring significant medical treatment and expense was excessive to the need and objectively unreasonable). The record needs more evidentiary development for either the Court or a jury to resolve the qualified immunity issue.

### C. State Law Claims

Plaintiff asserts state law claims under Louisiana Civil Code article 2315 and 2316 for "use of excessive force, brutality, unlawful detainment, arrest and assault and battery." Article 2315(A) provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2316 provides that "[e]very person is responsible for the damage he occasions not merely by his act but by his negligence, his imprudence, or his want of skill." Defendants assert that plaintiff has failed to adequately plead his state law claims. For the reasons above, the Court finds that plaintiff has adequately pleaded his claims against defendants.

### D. Liability of the City of New Orleans

Plaintiff asserts the City of New Orleans is vicariously liable under state law for the acts of the NOPD officers under Louisiana Civil Code article 2320. Article 2320 provides for vicarious liability of a supervisor for the acts of the subordinate done in the course of employment when a supervisor "might have

13

prevented the act which caused the damage, and ha[s] not done it." However, government entities cannot be held "vicariously liable" for violations of constitutional rights by government actors on the basis of the existence of an employer-employee relationship. <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 692 (1978). Instead, the plaintiff must show the existence of some official policy that "'causes' an employee to violate another's constitutional rights." <u>Id.</u> The official policy requirement can be met in one of three ways: (1) when the government entity "promulgates a generally applicable statement of policy and the subsequent act complaint of is simply an implementation of that policy;" (2) where no 'official policy' exists, but the policymaker himself violates a constitutional right; or (3) even without some affirmative policy, "if the need to take some action to control the agents of the local government entity 'is so obvious, and the inadequacy of existing practices so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 471 (5th Cir. 1999).

Plaintiff alleges that the City failed to prepare the officers for the post-Katrina environment that gave rise to plaintiff's constitutional violation, which falls under the third type of "official policy." Deliberate indifference. The Supreme Court

14

recognized that a city can be liable for inadequate police training, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). The plaintiff has failed to point to anything that would establish or even infer that the City of New Orleans failed to execute a policy of training their officers and was deliberately indifferent to the rights of the people with whom NOPD officers come into contact post-Katrina. The plaintiff has pointed to no evidence to support this blatantly conclusory assertion. The plaintiff's claims against the City of New Orleans are hereby dismissed under the clear instruction of the Supreme Court in Monell.[4]

Accordingly,

IT IS ORDERED: that the defendants' Motion to Dismiss is DENIED.

IT IS FURTHER ORDERED: that the defendants' Motion for Summary Judgment is GRANTED as to Officer Smith on the basis of qualified immunity.

---

[4] Plaintiff argues that Monell should be stretched to a situation in which police officers are obviously under stress (as in post-Katrina) and the City fails to adopt a policy dealing with officers under stress. This, plaintiff urges, without precedential support, constitutes per se deliberate indifference. To accept such a view would be to ignore Monell.

IT IS FURTHER ORDERED: that the defendants' Motion for Summary Judgment is DENIED as to Officer Evangelist.

IT IS FURTHER ORDERED: that the defendants' Motion for Summary Judgment as to the City of New Orleans is GRANTED.

New Orleans, Louisiana, August 6, 2009.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE